(No. 34132.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK J. BEDARD, Plaintiff in Error.

*Opinion filed September 20, 1957.*

CHARLES A. BELLOWS, and JASON ERNEST BELLOWS, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, (FRED G. LEACH, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff in error, Frank J. Bedard, hereinafter referred to as defendant, brings this writ of error from the circuit

court of Lake County where he was found guilty of a felony by the verdict of a jury on an indictment charging him with taking indecent liberties with a child. He was denied probation and on March 17, 1956, he was sentenced to the Illinois State Penitentiary for a term of not less than one nor more than three years.

Among the several errors here assigned, defendant complains that the court failed to summon jurors in the manner provided by the Jury Commissioners Act, erroneously denied defendant's motion to appoint a special bailiff in accordance with section 13 of the Jurors Act, (Ill. Rev. Stat. 1955, chap. 78, par. 13,) and made prejudicial remarks to defendant's counsel, all of which deprived the defendant of a fair and impartial trial.

Without reviewing the unpleasant details of the crime, it is sufficient to state that defendant, a married man 69 years old, is charged with taking indecent liberties with a female child of the age of eleven. Over defendant's objections, an oral confession and a written confession were each introduced into evidence, after a finding by the trial court that they were voluntarily made and were not the product of duress, threat or promises.

Nine errors are assigned and argued by defendant but only one will we consider, as we deem it of controlling importance.

Counsel for defendant argues that this cause should be reversed by reason of the fact that certain jurors sitting in the trial of the case were summoned pursuant to an order of one of the circuit judges by the sheriff of Lake County, as a special venire without complying with the provisions of the Jury Commissioners Act. Counsel for defendant further argues that his client was entitled to the appointment of a special bailiff to summon the jurors and that by reason of these errors, there should be a reversal of this cause.

By first adverting to the case of *People* v. *Siciliano,* 4 Ill.2d 581, we can best appreciate the complaint here

made. In that case the defendant, Siciliano, was charged with the sale of horsemeat in Lake County. He was represented by the same counsel who appeared for Bedard at this trial and on this writ of error. During the course of the Siciliano trial the regular panel of jurors which reported to hear the case became exhausted by reason of challenges. The trial court, following the provisions of section 13 of the Jurors Act (Ill. Rev. Stat. 1953, chap. 78, par. 13) ordered the sheriff to summon ten additional persons to report as prospective jurors. That section read as follows: "When by reason of challenge in the selection of a jury for the trial of any cause, or by reason of the sudden sickness or absence of any juror for any cause, the regular panel is exhausted, the court may direct the sheriff to summon a sufficient number of persons having the qualifications of jurors to fill the panel for the pending trial, but upon objection by either party to the cause to the sheriff summoning a sufficient number of persons to fill the panel, the court shall appoint a special bailiff to summon such person: * * *." This was first discovered by counsel for Siciliano when examining some of the jurors summoned in the above manner, whereupon he immediately challenged the array of the supplemental panel on the ground that the court should have directed the clerk to draw the names of any additional jurors needed pursuant to sections 8 and 9 of the Jury Commissioners Act. (Ill. Rev. Stat. 1953, chap. 78, pars. 31 and 32.) This court, in sustaining the trial court which denied the challenge, said: "Section 9 of the Jury Commissioners Act, which provides for the manner of summoning jurors if more are needed during the month, was not designed to meet the contingency arising when the regular panel becomes exhausted due to challenges during actual trial, but rather to provide a method of insuring a full panel at the start of any given case, and is comparable in its scope and purpose with section 8 of the Jurors Act. (Ill. Rev. Stat. 1953, chap. 78, par. 8.)"

Let us now consider the difficulties defendant's counsel encountered on his return engagement to the criminal court in Lake County. Bedard's case was set for trial on February 6, 1956, but, due to the State's Attorney being engaged in another trial, was continued to 1:30 P.M. on February 8, 1956. On *voir dire* examination of the jury by defendant's counsel it was revealed that there were members of the panel not drawn from the jury list prepared by the jury commissioners, but who had instead been ordered to appear for jury service by the sheriff and his deputies.

Counsel for defendant asked the court for permission to inquire of the sheriff as to the procedure followed by him in the selection of jurors. In denying the motion this colloquy ensued:

"Mr. Bellows: May I ask this, your Honor, apparently I am unfamiliar with what the Sheriff did, but am I to assume that the Sheriff of his own accord drew twelve names himself without drawing from the Jury Commissioners list?

The Court: I don't know how they were drawn.

Mr. Bellows: I think, if the court please, I would like to have the Sheriff come in here and disclose how he drew these names.

Mr. Nelson: May it please the Court, I believe that these additional twelve names were drawn in accordance with the Jurors Act. I believe this matter has been adjudicated in *People* v. *Nordell* and *People* v. *Siciliano*.

The Court: Complete your record.

Mr. Bellows: Mr. Nelson, I don't follow you. Are you telling me that Judge Decker ordered the Jury Commissioners to give a list of the jurors to the Sheriff?

Mr. Nelson: If that is the question I must answer that I don't know, I was in trial this morning. I do know these jurors were selected in accordance with the Jurors Act.

Mr. Bellows: I would like to have the Sheriff here.

The Court: Go ahead and start selecting the jury.

Mr. Bellows: By that time the evil is done.

The Court: I have ruled on it.

Mr. Bellows: And Your Honor overrules my motion?

The Court: I have overruled your motion."

There was then filed a motion challenging the array of the special venire and there was an alternative request that the court appoint a special bailiff to summon the special venire because of the interest of the sheriff in the proceeding. This motion was denied, whereupon the court explained to counsel the occasion for the special venire in these words: "I want the record to show that at the time that the additional twelve jurors were drawn that the original panel had been exhausted, they apparently would be exhausted. One jury was out on a murder case, another jury had been selected and was trying another case, that it became apparent that there was not sufficient jurors on the regular panel called to complete a jury for the present case which we are trying here. In view of that fact, a special venire of twelve was ordered by Judge Decker for the purpose of calling jurors to hear this case."

The available jurors at counsel's disposal were those that were left after the selection of two juries and the twelve who were chosen by the sheriff. In this latter group is found Joe Bomkamp, who was an assistant sheriff under the present sheriff for three years; Edith Eimerman, who had known the sheriff for many years; John Lunsden, who was a former grand juror and was intimately acquainted with the State's Attorney; Albert Hillman, who was called by his son-in-law, a deputy sheriff, belonged to the same political party as the State's Attorney; and Richard Rinaldo, who had known the sheriff for 50 years and had served as a juror 40 or 50 times.

Counsel for defendant peremptorily excused many of these jurors, realizing that they would probably favor the State since the sheriff was an integral part of the prosecution. He exhausted his right to challenge peremptorily.

For doing so, counsel thought he sensed an antagonism on the part of the other jurors, whereupon he sought to explain to the jury that they had not been called in a lawful manner. The court, feeling that counsel was unnecessarily persistent about a matter which had already been ruled upon, rebuked counsel very sharply. The remarks were quite disparaging and we believe necessarily prejudicial, as this court said in *People* v. *Riggins*, 8 Ill.2d 78, at page 85: "For jurors are ever watchful of the attitude of the trial court, so that his lightest word or intimation is usually received with deference and may prove controlling."

It is our opinion that the trial court erred in failing to comply with section 9 of the Jury Commissioners Act. Unlike the *Siciliano case*, the trial here had not commenced when the venire was issued. It would have been comparatively simple for the court to have issued an order for a certain number of names to be drawn from the jury commissioners' list. The sheriff would be able to summon those on the list who lived nearby and have them available for court when they were reached in the afternoon. The "contingency" referred to by this court in the *Siciliano case* was not present here. That section 13 contemplated a situation arising in course of actual trial is evidenced by the provision that either party may request a special bailiff if objections are found to the sheriff. Counsel for defendant was not in court when the venire was issued, and when he first learned that the special panel was called under section 13 of the Jurors Act and in contravention of section 9 of the Jury Commissioners Act he made a request for the appointment of a special bailiff. It was prejudicial error to deny this motion.

The sheriff's office frequently is interested in criminal prosecutions and often we find the sheriff and his deputies intensely partisan and anxious for a conviction. Their testimony ofttimes is critical and decisive, so a defendant being tried by a group of jurors who are friendly

to the prosecuting staff is placed in a position of disadvantage. A strict adherence to the Jury Commissioners Act would prevent such an injustice. We are of the view, therefore, that section 13 of the Jurors Act should be used sparingly in criminal cases, and certainly, when the exigencies of trial demand its use, the defendant is entitled to an impartial bailiff to select the jurors that are to determine his guilt or innocence. In *Healy* v. *People,* 177 Ill. 306, this court said, at page 311: "In the absence of a statutory provision clothing the court with the necessary power, the inherent power of the common law may be exercised, but if a statute points out the course to be pursued it is not to be departed from. The importance of selecting persons to act as jurors who possess the requisite qualifications to enable them to intelligently and impartially consider and determine the civil and criminal rights and interests of litigants, and of removing it from the power of any litigant or any interest to participate in any way in the selection or choosing of persons to compose the panel of jurors, has long been a matter of general public concern, which has found expression in various enactments of the General Assembly framed for the purpose of avoiding the evils of former prevailing methods, and of procuring for this important public service only such persons as were fitted to discharge it intelligently and without the intervention of outside influences, or any character of prejudice or bias."

We believe that the ends of justice and due process will be well served if defendant is accorded a new trial.

*Reversed and remanded.*